Good morning, your honors. Michael Park, attorney for appellate Jeffrey Sloan. Your honors, I believe there are three salient issues that I believe the court needs to hear with respect to this particular warrantless search of Mr. Sloan's laptop computer. And the district court made three errors, one regarding specificity, the other voluntariness, and adequacy of Miranda. With respect to specificity, the district court clearly erred in finding defendant consented to any of the conduct he did in this particular case. The fourth amendment calls for specificity in searches and seizures to avoid unreasonable searches and seizures. And the way the Constitution guards against this is requiring specifics with respect to person, place, and item to be seized. Here we definitely have specificity with respect to, if you believe that there was valid consent, we definitely have specificity as to what defendant consented to. Are you talking about searching his barracks? No, he consented to the search of his barracks, the vehicle, and the wall locker. That's all that's supported by the record. Didn't he also consented going over to his friend's house and getting the computer? We would argue that that was not effective consent, partly based on the voluntariness or involuntariness of his arrest or seizure. And the fact that Agent Wild had never reported that there was any consent in his investigative reports. And lo and behold, the district court found that your client was very cooperative. When he was asked whether or not they could go to, I think it was Barnes' house, and get the computer. He said yes, I'll take you. I got the key. That's what the district court judge said, Your Honor. That's correct. However, we're arguing that this is a military situation. He wasn't cooperative. He was obedient. He was following the directives of his superiors. He was taken from work to his barracks. He was escorted, the term used. He was ordered. That gets us back to the beginning of this whole thing where the government doesn't really argue against this, but he was in custody when he was escorted over to his barracks, and they gave him Miranda warnings. And one of your arguments is that the Miranda warnings were inadequate. That's correct, Your Honor. Why? The inadequacy of the Miranda with respect to his right to counsel. The particular army Miranda warnings was ambiguous at best as to whether he could obtain counsel, civilian counsel, free of charge. He said he could get a military counsel. That's correct, but there was no military action as far as this was in this particular case, and there was still that ambiguity. The important point is that he gets counsel for free. Right, and that was not clear with the army's warnings. So in your view, counsel from the army would have been inadequate? No, I'm saying that the Miranda warnings were woefully ambiguous. You know, you look at the purpose of the Miranda warnings. On this particular issue, it's to let the suspect know before questioning ensues, they have a right to be represented by counsel. If they can't afford one, they'll get one. One can be appointed for them. That is correct. All right. The warning that he received was that defendant, if defendant wanted a civilian lawyer, he was required to arrange for the lawyer to be present, and the lawyer would be at no expense to the government. That sounds like he has to pay for the lawyer. What else does it say? What else did they tell him? As far as the warnings? No, in terms of the government lawyer, the army lawyer. Well, that would be my argument. Don't they also say, or a military lawyer detailed for me at no expense to me or both? Yes. Is that what they also say? It does say that, too. Yeah. So if that hadn't been, you know, if the part about the civilian lawyer hadn't been in there, we'd have an appeal that you should have been told that you could retain a civilian lawyer. I mean, I'm not quite sure what's wrong with this. The fact of it's a Connell-type argument, Your Honor, where the Miranda warnings was not sufficient in that a reasonable person would believe that he was entitled to a civilian lawyer at no cost. But isn't this key inquiry whether the defendant was able to grasp the substance of what he was told, that he had the right to appointed counsel if he could not afford one? We said that in McGill. And not only that, but that was after Connell, and we distinguished Connell. And we said the key inquiry, does he know that he had the right to an appointed counsel if he could not afford one? And if we say what we've told him, you have a right, can be a civilian lawyer I can arrange at no expense to the government or a military lawyer detained for you at no expense to you. How can I suggest that he could not have understood, he could not have an appointed counsel if he could not afford one on that warning? Well, beyond what you're saying is correct, Your Honor. But beyond that, the Army's waiver and right form was defective in that it also had the ambiguous suggestion that defendant is not entitled to a civilian lawyer unless he pays one. And that would be Mr. Sloan's argument with respect to Miranda. Say that again, I'm sorry. That the right form was defective with respect to defendant's right to a civilian lawyer because it ambiguously suggested that the defendant is not entitled to a civilian lawyer unless he pays for one. That would be the inference that you could reasonably draw when you look at the form on its face. That's Mr. Sloan's argument. Isn't that the way it is in every instance anyway? Because when the police are out there, they're saying you have the right to a lawyer, but they don't say you have the right to a lawyer that you want. They're saying you have the right to a lawyer who's going to be the public defender at no cost to you. And here he was told, if you want your own lawyer, you're going to have to pay, but we'll give you a lawyer, not the public defender, but any military lawyer you want at no cost to you. That's why my colleague's question about are military lawyers somehow bad is important. Because if they are as able as any other lawyer, then he was told he had the right to that lawyer, and he would not be given any lawyer in any event. He would be given a public defender who is a government lawyer just like the military lawyer. So how does it change the subjective view? Your Honor, we're just arguing that the form itself, the substance form that the Army used does not comport with the Miranda requirements. Okay. And you're trying to get under the Connell case? Yes. All right. I think we understand you have about a minute. Okay. What else? Do you have some other points that you want to touch on briefly? Okay. Just let me see. The district court's finding that there was voluntary consent to enter, or voluntary consent any time after the search of his barracks, wall locker, and vehicle. There is no support. The judge does not support. There is no support in the record that would indicate that there was an oral consent, and it runs contrary to what the military did prior. You all know that there was two search warrants, and they both were defective.  And there was no consent. This laptop was found in another person's residence. There was no consent. There was this alleged oral discussion that led to the consent. Well, you know, if he's alleged, and as Judge Smith has said repeatedly at various times during our session this week, you know, you have to look at the judge. The district court judge made a number of findings, and our standard of review for those findings is clearly erroneous. Well, if you look at all the- You're categorizing them just as alleged, alleged, alleged. So we have to look at what the district court did. The district court made certain findings. That's correct. But the district court also did not recognize the errors that were made by this investigative team. Well, he found, you know, Mr. Wild or whatever his name, Officer Wild, whatever his title was, you know, I think we'd all recognize he apparently had some difficulties in carrying out his duties. But the district court judge listened very carefully to his testimony and found him credible. But the other agent who was present, Perez, he did not articulate that he had heard any consent issue being discussed at the time that Agent Wild allegedly obtained the consent at the CID office. And Perez was there, too. Perez states that there was specifically what he believed to be, it was pretty much understood that the defendant was in compliance. So you're suggesting that the district court's finding, in fact, as my good colleague has been talking about here, is clearly erroneous? Clearly erroneous because under the circumstances, this individual was detained, he was escorted, and he was ordered to do everything he was asked to do. It's not a permission-type situation. I see you nodding your head. You had me as your friend. Okay, thank you. I hope you understand. Thank you. Good morning. May it please the Court, I'm Larry Tong, Assistant United States Attorney, appearing for the government here. If I can take the last point first, the credibility determination, as Judge Paez has pointed out, is, of course, reviewed on a clearly erroneous standard. At page 44 of the defendant's own excerpts of record, Special Agent, as his title, Wild, testified specifically that upon the completion of the barrack search, the defendant turned to him and said, my computer is at this other location. Agent Wild said, well, may we have permission to go over to the residence and get the computer? The next question was, how did he respond? The answer is he said yes. Clearly, there is enough in the record to support Judge Seabright's finding that, in fact, the oral consent for that search was given. With regard to the voluntariness issue, if you boil down his entire argument, what it boils down to is an argument that any time anyone is in custody, he can't give valid consent. That, in effect, is what my colleague is arguing, even though he hasn't put it quite in those words. And I submit to you the reason he hasn't put it in those words is clearly it's contrary to law. There are numerous cases, one of which is the Krapzer case that we've cited in our brief, that say just because someone is in custody does not mean they can't give a valid waiver of rights or a valid consent to search. So the court needs to look beyond the fact of custody. That's only one of the five factors that this circuit has held to be relevant. The court said he had probable cause. They did not threaten to order him. They did not draw their weapons. They did not place him in handcuffs. Remained cooperative. Advised of his rights. Voluntarily waived them. Informed him he had a right to refuse consent. And they never told him that they could obtain or already had a search warrant so that he had tried to coerce him that way. They didn't do that. That's absolutely correct, Your Honor. Those are the five factors that this circuit in the Petain-Soriano case said are relevant for the inquiry. Four of the five weigh in favor of a finding of voluntariness. The record well supports the district court's finding that this was a voluntary consent to search. In the Petain case, they even go so far as to say the review here in this court is highly deferential. Not only do we show deference to the lower court's findings, but Your Honors are to review the evidence and the like most favorable to the lower court's findings. So clearly that finding is also supported, and the voluntariness should not be an issue for purposes of this proceeding. With regard to the adequacy of the Miranda rights, this case really is not Connell. It brought back memories because, frankly, I argued the Connell case in 1988, and I remember how I was troubled even as a prosecutor with the conflict in the warnings there. The agent went up with one set of oral warnings that said if you want a civilian lawyer or if you can't afford a lawyer, you have to hire one at your own expense and not at the expense of the government. Then the written waiver said if you can't afford a lawyer, one may, quote, unquote, be appointed in accordance with law. And your colleagues on an earlier panel said, well, that's confusing because, number one, there's a conflict, and number two, how is a civilian supposed to understand what in accordance with law requires? Now, this warning, by contrast, reasonably conveyed the essence of the rights guaranteed by Miranda, as Judge Smith pointed out. It pointed out that he had the right to remain silent, that anything he said could and would be used against him, that he had a right to an attorney before, during, and after questioning, and that the attorney critically could be a military lawyer appointed at no expense to him, or if he wanted a civilian lawyer, he would have to pay for it. It reasonably conveyed the right that he had to an appointed lawyer if he couldn't afford one during questioning. And the fact that it's a military lawyer is irrelevant. As Judge Seabright pointed out, they're bound by a similar rule of ethics, code of ethics, as any private lawyer would be. If you were to accept the argument asserted here, in essence, any public defender then would be subject to disqualification solely on account of the fact that he is paid by government funds. My friend here, I believe, is CJA appointed. He would be disqualified. It just doesn't hold any water. Your Honor, I think we've addressed the remaining points of the argument. So unless the Court should have any questions, we'll submit. Thank you. Thank you. Any further questions? All right. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is Countrywide Homes v. Hupai in the matter of the Hupai bankruptcy.
judges: Schroeder, Paez, Smith